IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ROBERT A. DEMOSS,

        *Plaintiff*,

vs.

MATRIX ABSENCE MANAGEMENT, INC.,

        *Defendant.*

Case No. 07-1388-EFM

**MEMORANDUM AND ORDER**

       This matter comes before the Court on cross motions for summary judgment. Plaintiff Robert A. DeMoss filed a motion for summary judgment (Doc. 19) which has been fully briefed and is ripe for decision. Defendant Matrix Absence Management, Inc. ("Matrix") filed a motion for summary judgment (Doc. 22) which has also been fully briefed and is ripe for decision. For the following reasons, the Court denies Plaintiff's motion and denies Defendant's motion.

**I. Facts**

       Plaintiff Robert A. DeMoss was employed at LSI Logic Corporation ("LSI"). He was a participant of the LSI Long Term Disability Benefit Plan ("Plan"). Defendant Matrix is the independent thirty-party claims administrator that manages the administration of LSI's short term and long term disability plans. Matrix is given the "exclusive authority and responsibility for all matters in connection with the operation and administration of the Plan."

-1-

The Plan provides that "[d]isability benefit payments and such other costs which are determined necessary to properly maintain and operate the Plan will be paid out of the Company's general assets."  Matrix plays no role in funding or budgeting claims for payment, and LSI funds the Plan.  Matrix administers the claims for benefits.

The Plan defines "Disability," in relevant part, as "any physical or mental condition arising from an illness, injury or pregnancy which renders a Participant incapable of performing work."  After twelve months of disability, the medical criteria set forth in the Social Security regulations under Title II of the Social Security Act are applied in determining whether a disability exists.  The Plan does not provide benefits for "mental, emotional or nervous illness or disorder of any type unless the Participant is confined in a Mental Hospital."  This confinement restriction, however, does not apply for the first twenty-four months of disability.  Accordingly, the Plan only provides benefits for mental illness for twenty-four months unless the individual is confined to a "mental hospital" after twenty-four months.  DeMoss was not confined to a mental hospital.

The Plan also provides for an elimination period that states "[a] participant who sustains a Disability will, subject to the provisions of the Plan, become eligible to receive benefits after such Disability has existed for a continuous period of three hundred sixty-four days."  As such, Plan benefits do not start until the second year of disability. An application for benefits must be made within 90 days of the point at which the individual becomes disabled, unless the individual is unable to make an application.  An individual cannot wait more than a year to apply for benefits.

On January 30, 2001, DeMoss took a leave of absence from LSI. On February 5, 2001, Matrix opened a short term disability claim file for DeMoss.  DeMoss listed his disabling condition as "Depression."  He received short term disability benefits from January 30, 2001 through January

29, 2002.

On the intake statement that DeMoss completed on February 5, 2001, DeMoss described his condition as "depression." DeMoss stated in a Medical Certification form, dated February 9, 2001, that he was unable to return to work due to "uncontrolled depression." DeMoss' treating physician, Jerald W. Leisy, M.D., submitted a February 15, 2001 report that contained a diagnosis of "severe schizoaffective disorder with obsessional features, depression and psychotic symptoms as well as suicidal ideation," but it did not mention physical limitations at all. Handwritten doctor's notes faxed on April 10, 2001 stated that DeMoss was a "juvenile diabetic" since "age 13" but that he had "very good blood levels."

On December 1, 2002, DeMoss' handwritten notes explained that he went to see a physician to determine whether there was any "organic basis for my depression/low energy." The physician, Dr. Olmstead, noted that he thought DeMoss' problems were "more psychiatric than organic." On a medical history form, dated December 4, 2002, DeMoss stated that he had "mild cardiac neuropathy."

On December 23, 2001, DeMoss completed an application for long term disability benefits. DeMoss described his disabling condition as "Clinical depression with type-1 diabetes (40 yrs) complications." DeMoss underwent independent medical testing on January 17 and 18, 2002 in which a neuropsychologist stated that "[t]ests results are incomplete at this point but Mr. DeMoss refused to complete testing. What we do have is suggestive of the type of impairment pattern you see with severe depression but that are also indications that Mr. DeMoss may be exaggerating his illness state." The report further states that "[h]e tries to present as depressed and has enough medical history to have something to be depressed about but his cognitive scores do not indicate he

has such cognitive decline from this depression that he would be unable to work."

On the Long Term Disability Claim Physician's Statement, dated February 7, 2002, a physician indicated that DeMoss suffered from "gradual decreasing visual acuity." In the box title "Date you believe that patient was unable to work (Month, Day, Year)," the physician wrote "NA."

On March 7, 2002, Matrix granted DeMoss an additional 60 days to submit medical records in support of his application for long term disability benefits. On May 10, 2002, Matrix found DeMoss eligible for long term disability benefits because of a mental, emotional, or nervous illness or disorder. Under the terms of the Plan, DeMoss received a gross monthly benefit payment of $4,973.99, less applicable offsets, from January 29, 2002 to January 27, 2003.

On July 3, 2002, DeMoss' attorney at the time, Roger Wilson, wrote Matrix a letter in which he contended that DeMoss was eligible for additional long-term disability benefits based on his diabetes, cardiac neuropathy, and vision related problems.[1] Mr. Wilson stated that he was unsure whether the Plan's claim review procedure was applicable because DeMoss' claim was not denied, as such, by Matrix. He stated that the letter was "to request a review and reconsideration of the basis of the benefits to which Mr. DeMoss is entitled and to request that the benefits not be so limited in duration." Mr. Wilson also requested additional time to submit clarifying medical documentation to support the request, if needed. Matrix did not respond to this letter, and DeMoss provided no further medical documentation.

DeMoss received long term disability benefits under the Plan from January 29, 2002 through

---

[1] Plaintiff contends that this letter was a request for administrative review and that DeMoss was expecting further administrative proceedings and was prepared to submit additional documentation. Defendant contends that the letter was not a proper request for an administrative review. It is undisputed, however, that the letter was sent to Matrix and is included in the administrative record. The Court will discuss this letter more fully later in the Order.

January 27, 2003. LSI has refused to make payment for any benefit periods after January 28, 2003. Plaintiff brings this action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a), challenging the plan administrator's decision to not grant physical disability benefits or provide a full and fair review. Both Plaintiff and Defendant seek summary judgment. Plaintiff seeks summary judgment asserting that the Court should order that Plaintiff has been physically disabled according to the disability criteria set forth in the policy and he is entitled to disability benefits and prejudgment interest. Defendant seeks summary judgment asserting that the Court should uphold Defendant's denial of physical disability benefits and find that Plaintiff is only entitled to the mental disability benefits it previously granted.

## II. Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that "there is no genuine issue as to any material fact" and that it is "entitled to judgment as a matter of law."[2] "An issue of fact is 'genuine' if the evidence allows a reasonable jury to resolve the issue either way."[3] A fact is "material" when "it is essential to the proper disposition of the claim."[4] The court must view the evidence and all reasonable inferences in the light most favorable to the nonmoving party.[5]

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.[6] In attempting to meet this standard, the moving party need not disprove the

---

[2] Fed. R. Civ. P. 56(c).

[3] *Haynes v. Level 3 Communications*, LLC, 456 F.3d 1215, 1219 (10th Cir. 2006).

[4] *Id.*

[5] *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

[6] *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003)(citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

nonmoving party's claim; rather, the movant must simply point out the lack of evidence on an essential element of the nonmoving party's claim.[7]

If the moving party carries its initial burden, the party opposing summary judgment cannot rest on the pleadings but must bring forth "specific facts showing a genuine issue for trial."[8] The opposing party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[9] "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein."[10] Conclusory allegations alone cannot defeat a properly supported motion for summary judgment.[11] The nonmovant's "evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise."[12]

Summary judgment is not a "disfavored procedural shortcut," but it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."[13] Even though the parties have filed cross-motions for summary judgment, the legal standard does not change.[14]

---

[7]*Id.* (citing *Celotex*, 477 U.S. at 325.)

[8]*Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005).

[9]*Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1197 (10th Cir. 2000)(citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).

[10]*Adler*, 144 F.3d at 671.

[11]*White v. York Int'l Corp.*, 45 F.3d 357, 363 (10th Cir. 1995).

[12]*Bones v. Honeywell Intern, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

[13]*Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

[14]*City of Shawnee v. Argonaut Ins. Co.*, 546 F. Supp. 2d 1163, 1172 (D. Kan. 2008).

The Court must determine if there are any disputed material facts.[15] Each motion will be treated separately.[16]

**III. Analysis**

Plaintiff challenges the plan administrator's decision to not grant physical disability benefits or provide a full and fair review. The first issue both parties raise is the appropriate standard of review in this case. "A denial of benefits covered by ERISA 'is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.'"[17] "If the benefit plan gives the administrator such discretion, then, absent procedural irregularities, the denial of benefits is reviewed under an arbitrary and capricious standard."[18]

In this case, it is undisputed that Matrix is the administrator, while LSI funds the Plan. The Plan grants the administrator "exclusive authority and responsibility for all matters in connection with the operation and administration of the Plan" and the administrator decides whether a Plan participant is eligible for benefits. Matrix has the authority to determine eligibility for benefits while LSI merely pays the benefits.[19] Matrix's duties and authority are of the type that generally

---

[15]*Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000).

[16]*Id.*

[17]*Flinders v. Workforce Stabilization Plan of Phillips Petroleum Co.*, 491 F.3d 1180, 1189 (10th Cir. 2007) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)).

[18]*Kellogg v. Metropolitan Life Ins. Co.*, 549 F.3d 818, 825-26 (10th Cir. 2008) (citing *Fought v. UNUM Life Ins. Co.*, 379 F.3d 997, 1003 (10th Cir. 2004)).

[19]Although Plaintiff contends a less deferential standard of review is applicable because Matrix sent LSI one email during January of 2002 requesting direction with the claim and this indicates a conflict of interest, Defendant points out that there is no evidence that LSI ever responded to this email or that LSI had any input into the decision. In addition, Plaintiff has presented no evidence that LSI had any input into Matrix's determination to deny or grant benefits in DeMoss' case or any other case. As such, it appears that a conflict of interest did not exist.

requires the court to apply the arbitrary and capricious standard of review.

Plaintiff, however, asserts that Defendant is not entitled to judicial deference and that a *de novo* review is appropriate because Defendant has failed to exercise its discretion, has failed to meet ERISA deadlines, and has failed to consider evidence submitted to it. Plaintiff asserts that he requested an administrative review to which Defendant never responded, while Defendant states that Plaintiff failed to properly request an administrative review.

In *Gilbertson v. Allied Signal, Inc.*,[20] the Tenth Circuit found that for an administrator to be entitled to a deferential standard of review, the administrator must make a decision, within the required timeframe, to which a court may defer. "When the administrator fails to exercise his discretion within the required timeframe, the reviewing court must apply *Firestone's* default *de novo* standard."[21]  "Deference to the administrator's expertise is inapplicable where the administrator has failed to apply his expertise to a particular decision."[22]

The facts pertinent to this issue are as follows.  On December 23, 2001, Plaintiff applied for long-term disability benefits stating that his disabling condition was "clinical depression with type-1 diabetes (40 yrs) complications."[23]  On May 10, 2002, Matrix granted long-term benefits and stated that the "mental, emotional or nervous illness or disorder" provision applied to his claim which

---

[20]328 F.3d 625 (10th Cir. 2003).

[21]*Id*. at 631-32.

[22]*Id.* at 632.

[23]Arguably, the listed disability creates ambiguity because it is unclear whether Plaintiff is requesting long-term benefits for both a mental condition, i.e., clinical depression, and a physical condition, i.e., type-1 diabetes complications or whether Plaintiff is only requesting benefits for a mental condition.

limited DeMoss' benefits to one year.[24] Plaintiff's former attorney wrote a letter to Matrix on July 3, 2002, in which he stated that he believed Plaintiff was entitled to benefits of a longer duration based on a physical disability. A portion of the letter is as follows:

> As you are aware and reflected by your file in this case, I represent Mr. Robert A DeMoss who submitted an application for long-term disability benefits under the [Plan]. His claim was not denied, as such, by [Matrix] and therefore I am somewhat doubtful whether or not he is subject to IV.D found on page 13 of the Plan. That section sets forth the claim review procedure under the Plan and states that it pertains to "any participant or the representative of a participant whose <u>claim has been denied</u> . . . ." It goes on to provide a procedure for a review of the decision made on his or her claim. It provides that the request must be filed within sixty (60) days after receipt of the written decision. Your letter to Mr. DeMoss was written to him on May 10, 2002 and received by him a few days thereafter. Regardless of the applicability of IV.D of the Plan, I thought it prudent to write this letter on behalf of Mr. DeMoss at this time.
> . . .
> I had indicated in previous correspondence to you based on the medical, etc. information furnished your company, it would seem Mr. DeMoss, at least qualifies under that provision but that he had other severe health complications and history. I believe that history is either inextricably linked to and is a part of Mr. DeMoss' emotional state and that consideration needs to be given to that history as a cause of and basis for his inability to work or it constitutes a separate cause or causes for his inability to work upon which his claim for benefits could also be founded.
> . . .
> Because of the extensive nature of the other health problems and the severity thereof, it would seem that Mr. DeMoss' benefits under the Plan should not be limited to one year. This letter then is to request a review and reconsideration of the basis of the benefits to which Mr. DeMoss is entitled and to request that the benefits not be so limited in duration. Request is also made for additional time in which to submit clarifying medical documentation supporting the foregoing, if need. Ninety (90) days should suffice.

---

[24]Plaintiff contends Defendant caused any ambiguity in the review process because the May 10, 2002 letter failed to satisfy ERISA denial notice requirements. Specifically, Plaintiff contends that Defendant failed to notify Plaintiff how he could perfect his claim and failed to notify Plaintiff of its review procedures in its denial notice. The May 10, 2002 letter, however, was not a "denial" notice. It was a letter granting Plaintiff benefits for a mental disability.

The letter, however, may have operated as a denial notice by its silence with regard to physical disability benefits, and Defendant became aware of this fact when Plaintiff sent a letter on July 3, 2002 letter requesting review of the applicability of physical disability benefits. At that time, Defendant became aware that Plaintiff believed he was entitled to physical long-term disability benefits.

> What I am attempting to do on behalf of Mr. DeMoss is to open a dialogue on this matter without waiting until his present benefits are about to terminate under the present situation, and if need be, to protect his 60 day response time if that is even applicable here. If you believe I should be proceeding otherwise; i.,e., by waiting until later for example, please advise.[25]

Although Defendant asserts that this letter failed to serve as a proper appeal, Defendant does not set forth what would have constituted a proper appeal. In reviewing the Plan language, the Plan sets out claim review procedures which require the request for review to: (1) be in writing; (2) be filed within sixty (60) days after receipt of the written decision; (3) set forth all of the grounds upon which the request for review is based and any facts in support thereof; and (4) set forth any issues or comments which the Participant deems pertinent to his or her claim. The Plan also states that upon receipt of the request for review of the decision, the Plan administrator will provide the participant with a written decision within sixty (60) days after receipt.

It appears that the July 3, 2002 letter from DeMoss' attorney satisfied these four requirements because it was in writing, stated that it was protecting Plaintiff's right to appeal within 60 days of the May 10, 2002 letter if necessary, set forth the grounds on which Plaintiff believed he was entitled to physical disability benefits, and set forth the issues pertinent to his claim for physical disability benefits. Although Plaintiff questioned whether he was subject to the appeal provisions because there was not a specific denial, he specifically stated that he was preserving the right to appeal and questioned Defendant as to the proper procedure. As such, it appears to the Court that Plaintiff requested an administrative review. Yet, Defendant never responded to this letter.

Defendant argues that even if the letter served as a proper appeal, it is still entitled to judicial

---

[25] Administrative record, LSI 40-42.

deference. Defendant states Plaintiff failed to provide any new evidence or raise any new issues in support of his administrative appeal. Asserting that the arbitrary and capricious standard remains applicable, Defendant states that its initial denial and statement of reasons can effectively be applied to Plaintiff's alleged administrative appeal.

The Tenth Circuit has recognized a limited exception to the *de novo* standard when an administrator has not made a decision, and "[e]ven 'deemed denied' decisions can be afforded judicial deference if the reviewing court determines that the administrator's initial denial and statement of reasons can effectively be applied to the claimant's appeal."[26] "[I]f a claimant fails to provide meaningful new evidence or raise significant new issues [on administrative appeal] and the delay does not undermine [the court's] confidence in the integrity of [the administrator's] decision-making process, then we apply arbitrary and capricious review."[27]

In a recent case, the Tenth Circuit stated that "[w]hen a plan administrator fails to exercise its discretion and render a decision within the requisite administrative review period set forth in ERISA's implementing regulations, we have, to date, applied a 'substantial compliance rule.'"[28] "[A] plan administrator is in substantial compliance with th[e] deadline if the delay is (1) inconsequential; and (2) in the context of an on-going, good-faith exchange of information between the administrator and the claimant."[29] Although the Tenth Circuit questioned the continued validity of the substantial

---

[26]*Gilbertson*, 328 F.3d at 633 (citing *McGarrah v. Hartford Life Ins. Co*, 234 F.3d 1026, 1031 (8th Cir. 2000)).

[27]*Finley v. Hewlett-Packard Co. Employee Benefits Org. Income Protection Plan*, 379 F.3d 1168, 1174 (10th Cir. 2004)(internal quotations and citations omitted).

[28]*Kellogg v. Metropolitan Life Ins. Co.*, 549 F.3d 818, 827 (10th Cir. 2008) (citing *Finley*, 379 F.3d at 1173).

[29]*Kellogg*, 549 F.3d at 827 (quotations and citations omitted).

compliance rule, it found that it was unnecessary to decide that issue because there was "no compliance at all" on the defendant's part.[30]

Here, the facts are similar to the facts in *Kellogg* in that Plaintiff requested review and never received a response. The difference in facts is that the administrator originally issued a specific denial letter in *Kellogg* that set forth its reasons for denying the claim and explained that the claimant had the right to appeal its decision within sixty days.[31] In our case, the administrator did not issue a denial letter but rather granted Plaintiff benefits for a mental disability. Plaintiff, however, requested a review on July 3, 2002 of whether he was entitled to physical long-term benefits for a longer duration than mental long-term benefits and did not receive a response to that letter.

In *Kellogg*, the plaintiff argued that defendant's failure to respond to her appeal indicated that there was "no timely discretionary act . . . to which [this] court can defer."[32] The Tenth Circuit concluded that there was no compliance with ERISA deadlines by the administrator because the administrator ignored the claimant's request for documentation and review of the denial decision.[33] Similarly, here, because Defendant never responded to the letter, Defendant did not comply with ERISA deadlines in responding to Plaintiff's request for review.

In addition, although Defendant asserts that Plaintiff failed to provide new evidence or raise

---

[30] *Id.* at 828.

[31] *Id.* at 822-23.

[32] *Id.* at 826.

[33] *Id.* at 827. Under 29 U.S.C. § 1133(2), a benefit plan is required to "afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim." ERISA regulations provide that a plan administrator must issue a decision on an appeal within sixty days after receipt of request for review. *See* 29 C.F.R. § 2560.503-1(i)(1)(i). The time period shall begin "at the time an appeal is filed in accordance with the reasonable procedures of a plan, without regard to whether all the information necessary to make a benefit determination on review accompanies the filing." 29 C.F.R. § 2560.503-1(i)(4).

new issues and that the "initial denial and statement of reasons can effectively be applied" to Plaintiff, Defendant never issued a specific "denial" letter but rather granted Plaintiff mental long-term benefits. Plaintiff stated that he would provide additional documents if needed and Defendant never responded to Plaintiff's statement. Because Defendant never issued an initial denial letter stating its reason for not granting Plaintiff's claim for physical long-term benefits and never responded to Plaintiff's July 3, 2002 letter in which Plaintiff requested a review of physical long-term benefits, there is no statement of reasons to which this Court may defer.[34] Defendant did not provide Plaintiff with the opportunity for a full and fair review which is a procedural irregularity.

Accordingly, the Court will review Defendant's decision under the *de novo* standard of review. "[T]he best way for a district court to implement ERISA's purposes in this context is ordinarily to restrict de novo review to the administrative record compiled during the claim administration process, instead of taking new evidence, hearing witnesses, and the like."[35] "The court's de novo review is 'essentially a bench trial on the papers with the district court acting as the finder of fact,' since there is no right to a jury trial under ERISA."[36] In conducting a *de novo* review, "the court's role is to determine whether the ERISA plan administrator made a correct decision based on the record before it at the time the decision was made."[37]

The Court cannot conclude whether Matrix made a correct decision based on the record that

---

[34] Although Defendant makes several arguments as to why Plaintiff is not entitled to physical long-term benefits, none of the reasons are articulated in the administrative record because these reasons were not articulated in the May 10, 2002 letter granting Plaintiff long-term benefits for his mental disability, and Defendant did not respond to Plaintiff's July 3, 2002 request for review of physical long-term benefits.

[35] *Jewell v. Life Ins. Co. of N. Am.*, 508 F.3d 1303, 1308 (10th Cir. 2007) (quotations and citation omitted).

[36] *Niles v. American Airlines, Inc.*, 563 F. Supp. 2d 1208, 1214-15 (D. Kan. 2008) (citing *Muller v. First Unum Life Ins. Co.*, 341 F.3d 119, 124 (2d Cir. 2003)).

[37] *Hammers v. Aetna Life Ins. Co.*, 962 F. Supp. 1402, 1406 (D. Kan. 1997).

was before Matrix at the time of the decision because it does not appear that Matrix specifically considered Plaintiff's claim for physical disability benefits. Matrix did not address physical disability benefits in the May 10, 2002 letter and never responded to Plaintiff's contention in his July 3, 2002 letter that he believed he was entitled to physical disability benefits. Although the evidence before Matrix at the time it made its initial decision indicated a mental disability, there was also evidence regarding Plaintiff's physical disabilities. In Plaintiff's application for long-term benefits, he stated that his disability was "clinical depression with type-1 diabetes (40 yrs) complications." The Court is unclear whether Matrix ever considered whether Plaintiff was eligible for physical disability benefits, and Matrix did not perform a full and fair review of the claim at the time Plaintiff requested review. As such, the Court finds that Defendant's decision to not grant Plaintiff long-term physical disability benefits was in error.[38]

Because Defendant's decision was in error, the Court must determine the appropriate remedy. "Generally speaking, when a reviewing court concludes that a plan administrator has acted arbitrarily and capriciously in handling a claim for benefits, it 'can either remand the case to the administrator for a renewed evaluation of the claimant's case, or it can award retroactive

---

[38]Even under the more deferential arbitrary and capricious standard, the Court would find that Defendant's decision was arbitrary and capricious. A decision is arbitrary and capricious if not supported by substantial evidence. *Adamson v. Unum Life Ins. Co. of Am.*, 455 F.3d 1209, 1212 (10th Cir. 2006). "Indicia of an arbitrary and capricious decision include, inter alia, lack of substantial evidence." *Rekstad v. U.S. Bancorp*, 451 F.3d 1114, 1120 (10th Cir. 2006). Failure to gather and examine evidence bolsters finding that plan administrator acted in arbitrary and capricious manner. *Id.* at 1121 (citing *Caldwell v. Life Ins. Co. of N. Am.*, 287 F.3d 1276, 1285-86 (10th Cir.2002)). As stated above, the Court is unsure whether the administrator even addressed the issue of whether Plaintiff was entitled to physical long-term benefits. There is no initial statement of reasons denying a claim for physical disability benefits, and Plaintiff requested review as to whether he was entitled to these benefits. There was no further communication between the parties, and it does not appear that Defendant gathered any additional evidence or even examined the existing evidence as support for a physical disability claim. Accordingly, the Court finds that Plaintiff was not given a full and fair review and Defendant's decision was arbitrary and capricious.

reinstatement of benefits.'"[39]  "If the plan administrator failed to make adequate factual findings or failed to adequately explain the grounds for the decision, then the proper remedy is to remand the case for further findings or additional explanation."[40]  A remand is unnecessary if "the evidence in the record clearly shows that the claimant is entitled to benefits."[41]

Although case law discussing remand to the plan administrator generally involves the court's determination that the administrator acted in an arbitrary and capricious manner, the Tenth Circuit has stated that "the underlying rationale supporting a remand versus a reinstatement of rights is applicable" on a *de novo* review.[42]  The Tenth Circuit has also stated that the court should not "function as substitute plan administrators."[43]  Accordingly, because the Court finds that the administrator's decision is in error because it failed to provide a full and fair review considering Plaintiff's assertion that he was entitled to physical disability benefits and the evidence does not clearly show that Plaintiff is entitled to benefits, the Court remands the case to the administrator. Neither Plaintiff nor Defendant are entitled to summary judgment because neither party shows as a matter of law that Plaintiff is or is not entitled to physical disability long-term benefits.

Upon remand to the administrator, Defendant must provide Plaintiff a full and fair review. If Defendant denies Plaintiff's request for physical long-term disability benefits, Defendant must set forth its reasons and rationale, and allow Plaintiff to submit additional evidence supporting his claim

---

[39] *DeGrado v. Jefferson Pilot Fin. Ins. Co.*, 451 F.3d 1161, 1176 (10th Cir. 2006) (citing *Cook v. Liberty Life Assur. Co. of Boston*, 320 F.3d 11, 24 (1st Cir. 2003)).

[40] *Flinders*, 491 F.3d at 1194 (internal quotations and citations omitted).

[41] *Id.* (citations omitted).

[42] *Ray v. UNUM Life Ins. Co. of Am.*, 224 Fed. Appx. 772, 780, n. 3 (10th Cir. 2007) (unpublished).

[43] *Jewell,* 508 F.3d at 1308 (10th Cir. 2007).

for physical disability benefits. After Defendant has provided its rationale and Plaintiff has submitted additional evidence, if any, Defendant should evaluate Plaintiff's claim as it would an appeal from an initial denial of benefits. Matrix should render its decision within 120 days from the date of this Order, and the decision shall be final for purposes of exhausting remedies.

**IT IS ACCORDINGLY ORDERED** that Plaintiff's Motion for Summary Judgment (Doc.19) is hereby denied, and Defendant's Motion for Summary Judgment (Doc. 22) is hereby denied.

**IT IS SO ORDERED**.

Dated this 10th day of June, 2009 in Wichita, Kansas.

/s Eric F. Melgren
ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE